## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | |
|---|---|
| In re:<br><br>IBCS Mining, Inc., <u>et al.</u>[1]<br><br>Debtors. | Chapter 11<br>Case No. 14-61215<br>Jointly Administered |

### DECLARATION OF EDMUND SCARBOROUGH IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS

Edmund Scarborough declares and says:

1.     I am the President of IBCS Mining, Inc. ("**IBCS**"), a corporation headquartered in Charlottesville, Virginia.  I am familiar with the day-to-day operations, businesses and financial affairs of the Debtors (as defined below).

2.     I am the President of IBCS Mining, Inc., Kentucky Division ("**IBCS KY**"), a corporation headquartered in Charlottesville, Virginia.  I am familiar with the day-to-day operations, businesses and financial affairs of the Debtors (as defined below).

3.     I submit this declaration (the "**Declaration**") (i) in support of the petitions (the "**Petitions**") of the Debtors for relief under Chapter 11 of Title 11 of the United States Code

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  IBCS Mining, Inc., (8425) and IBCS Mining, Inc., Kentucky Division (8711).  The location of the Debtors' service address is 944 Glen Wood Station Lane, Suite 101, Charlottesville, Virginia 22901.

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:     804.771.9500
Facsimile:     804.644.0957
E-mail:  rwestermann@hf-law.com
         rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*

(the "**Bankruptcy Code**"), (ii) pursuant to 28 U.S.C. § 1746 in support of the Debtors' petitions and contemporaneously-filed requests for relief in the form of motions and applications (the "**First Day Motions**") and (iii) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of these Chapter 11 cases. I have reviewed the First Day Motions or have otherwise had their contents explained to me, and it is my belief that the relief sought therein is essential to the uninterrupted operation of the Debtors' business and to the Debtors' reorganization.

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based upon experience, knowledge and information concerning the operations of the Debtors and the coal industry as a whole. If called upon to testify, I would testify competently to the facts set forth in this Declaration. Unless otherwise indicated, the financial information contained herein is unaudited and provided on a consolidated basis.

## Commencement of Reorganization Proceedings

5.      On June 27, 2014 (the "**Petition Date**"), IBCS and IBCS KY (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      Part I of this declaration describes the Debtors' businesses, Part II describes the circumstances giving rise to the commencement of these chapter 11 cases, Part III describes the

Debtors' prepetition restructuring initiatives and Part IV sets forth the relevant facts in support of the First Day Motions.

## I.    The Debtors' Businesses

7.    IBCS is a producer and marketer of coal based out of a mine owned by IBCS KY and located in Kentucky. IBCS' principal business is the mining, preparation and sale of coal.

8.    IBCS is a Delaware corporation that is owned by Edmund and Yvonne Scarborough.

9.    IBCS KY is a Kentucky corporation owned 100 percent by IBCS.

10.    A chart describing the corporate structure of the Debtors and certain non-debtor entities is attached hereto as <u>Exhibit A</u>.

## II.    Events Leading to the Chapter 11 Cases

11.    The Debtors' businesses have reached the point of unsustainability absent utilization of the tools presented by chapter 11.

12.    Prior to the Petition Date, Virginia Electric and Power Company ("**Dominion**") and IBCS entered into a Master Coal Purchase and Sale Agreement dated September 23, 2011 (the "**Agreement**") and a Confirmation effective May 3, 2013 and designated "VCHEC-IBCS-GOS0.86-T-0547," as amended by Amendment No. 1 dated June 1, 2013 and Amendment No. 2 dated October 29, 2013 (the "**Confirmation**").

13.    The Agreement, as modified by the Confirmation and the Amendment (defined herein) represents the majority, if not all, of the Debtors' income.

14.    Pursuant to the terms of the Agreement, IBCS was required to provide a certain quantity and quality of coal to Dominion. In order to meet the quality standards required by the

Agreement, IBCS was required to purchase coal from outside producers to mix with the coal produced by IBCS. Due to liquidity issues and increasing costs, as well as delays with onsite permits (that have now been resolved), IBCS was unable to purchase the required coal from outside producers and as such, IBCS had difficulty providing the required contract quantity of coal to Dominion under the terms of the Agreement.

15.     In light of these challenges, and in light of other challenges facing both parties, IBCS was unable to sell coal to Dominion, which, in turn, forced IBCS to cease production operations. During this time, only a handful of key employees have been retained, to ensure the safety of the mine and the Debtors' ability to resume operations when financing had become available and when an amendment with Dominion had been executed.

III.   **Prepetition Restructuring Initiatives**

16.     The Debtors' management team has taken various actions in response to the challenges described above. Facing these liquidity and operational issues, for the past several months, the Debtors began exploring outside financing and possible sale options. Although the Debtors did have some promising leads, these efforts did not reach the desired results.

17.     In particular, beginning in the Fall of 2013, the Debtors explored numerous financing alternatives that would alleviate their financial burdens, and negotiated term sheets with various lenders both domestically and abroad, including the proposed DIP Lender. Proposed borrowings under these facilities were as high as $33 million which would take out all debt and allow the Debtors to expand operations through the creation of a wash plant. For a variety of reasons, many of which were beyond the Debtors' control, these funding efforts did not come to fruition, and the Debtors instead began focusing their efforts on the DIP Financing

and a restructuring and/or sale through Chapter 11, including the negotiation of an appropriate amendment to the Dominion contract.

18.    To address the Dominion contract issues, prior to the Petition Date, on June 26, 2014, Dominion and IBCS entered into an amendment to the Agreement (the "**Amendment**").

19.    The Amendment modified certain terms of the Agreement and Confirmation, including but not limited to the contract price and contract quantity, and allowing the Debtors more time to make up the quantity delivery shortfall.

20.    Section 7 of the Amendment requires IBCS to file a motion to assume the entirety of the Agreement, Confirmation, and the Amendment.

21.    Without approval of the Amendment and the DIP Financing Facility required to resume operations, the Debtors will likely be forced to liquidate. Those were the two conditions precedent to the bankruptcy filing.

22.    The Debtors have determined, in the prudent exercise of their business judgment, that the commencement of these chapter 11 cases at this time is the best alternative in order to stabilize their businesses, provide access to DIP financing and ensure that maximum value can be preserved and realized for the benefit of their estates. While the Debtors are cognizant of the costs associated with chapter 11, the Debtors believe that, by using the tools available to them under the Bankruptcy Code, they can effectuate a value-maximizing transaction through a plan of reorganization or sales. The Debtors have been and continue to be focused on developing a restructuring solution that maximizes value for all of their stakeholders.

23.    Upon the conclusion of the chapter 11 process, the Debtors expect to restructure their debt obligations and capital structure, and hopefully have obtained the highest recovery

possible for creditor constituencies through a chapter 11 plan of reorganization or a sale or series of sales pursuant to section 363 of the Bankruptcy Code. In the meantime, the Debtors will marshal all of their resources to continue to operate their businesses in the ordinary course, honor their strong customer and vendor relationships and maintain their prominence in the coal industry.

## IV.   **First Day Motions**

24.   The Debtors filed the First Day Motions concurrently with the filing of their chapter 11 petitions. The Debtors request that each of the First Day Motions be granted, as each constitutes a critical element in achieving a successful and smooth transition to chapter 11.

25.   For a more detailed description of the First Day Motions than set forth below, the Debtors respectfully refer the Court to the respective First Day Motions. To the extent that this Declaration and the provisions of any of the First Day Motions are inconsistent, the terms of the First Day Motions shall control. Capitalized terms that are used in this Part IV but not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion.

### A.   **Administrative Motions**

i.   *Debtors' Motion for an Order Directing Joint Administration of Chapter 11 Cases (the "**Joint Administration Motion**")*

26.   The Debtors seek entry of an order directing joint administration of these cases for procedural purposes only, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Local Rules of the United States Bankruptcy Court for the Western District of Virginia (the "Local Bankruptcy Rules"). Specifically, the Debtors request that the Court maintain one file and one docket for all of the chapter 11 cases under the lead case, IBCS. Further, the Debtors request that an entry be made on the docket of each of the chapter 11 cases of the Debtors to indicate the joint administration of the estates.

27.     Given the provisions of the Bankruptcy Code and the Debtors' affiliation, joint administration of these cases is warranted. Joint administration will avoid the preparation, replication, service and filing, as applicable, of duplicative notices, applications and orders, thereby saving the Debtors considerable expense and resources. The Debtors' financial affairs and business operations are closely related. Many of the motions, hearings and orders in these chapter 11 cases will affect each Debtor and their respective estates. The rights of creditors will not be adversely affected, as this Motion requests only administrative, and not substantive, consolidation of the estates. Moreover, each creditor can still file its claim against a particular estate. In fact, all creditors will benefit by the reduced costs that will result from the joint administration of these chapter 11 cases. The Court also will be relieved of the burden of entering duplicative orders and maintaining duplicative files. Finally, supervision of the administrative aspects of these chapter 11 cases by the United States Trustee for the Western District of Virginia will be simplified.

28.     I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Joint Administration Motion should be granted.

ii.     *Debtors' Motion for an Order (i) Extending the Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases and Statements of Financial Affairs and (ii) Extending the Time to Schedule the Meeting of Creditors (the "**Extension of Schedules Motion**")*

29.     The Debtors seek entry of an order granting additional time to file their schedules and statements of financial affairs and additional time to schedule the meeting of

creditors. Due to the complexity of their operations and the numerous other matters that the Debtors must attend to in connection with filing these cases, the Debtors will not be able to complete the schedules of assets and liabilities, schedules of current income and expenditures, statements of executory contracts and unexpired leases and statements of financial affairs in the fourteen days provided under Bankruptcy Rule 1007(c). To facilitate this extension, the Debtors also seek entry of an order authorizing the U.S. Trustee to schedule the section 341 meeting after the 40-day deadline imposed by Bankruptcy Rule 2003(a).

30.     Given the many critical operational matters that the Debtors' management and legal personnel must address in the early days of these chapter 11 cases, I believe that with the extension requested, the Debtors will be able to focus their attention to business operations to maximize the value of the Debtors' estates during the first critical post-petition months. I believe this will help the Debtors make a smooth transition into chapter 11 and, therefore, maximize the value of the Debtors' estates to the benefit of creditors and all parties in interest.

31.     I believe that the relief requested in the Extension of Schedules Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Extension of Schedules Motion should be granted.

**B.     Operational Motions Requesting Immediate Relief**

i.     *Debtors' Motion for Entry of an Order Authorizing (i) Debtors to Continue to Use Existing Cash Management System and Maintain Existing Bank Accounts and Business Forms and (ii) Financial Institutions to Honor and Process Related Checks and Transfers (the "**Cash Management Motion**")*

32.     The Debtors seek entry of an order authorizing, but not directing them, to (i) continue to operate their prepetition cash management system with respect to intercompany cash management and obligations, (ii) maintain the Debtors' existing bank accounts, and (iii) maintain the Debtors' existing business forms. Without the requested relief, the Debtors would have great difficulty maintaining their operations, which could cause grievous harm to the Debtors and their estates.

33.     I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Cash Management Motion should be granted.

ii.     *Motion for Entry of Order Providing for the Appointment of David Stetson as Chief Restructuring Officer of the Debtors Effective Nunc Pro Tunc to the Petition Date (the "**CRO Motion**")*

34.     The Debtors seek entry of an order authorizing the appointment of David Stetson as Chief Restructuring Officer of the Debtors effective nunc pro tunc to the Petition Date.  The employment of Stetson is a condition of the DIP Financing Facility.  Without such employment, the DIP Lender will not provide the DIP Financing Facility and, given the Debtors' limited liquidity and need for an immediate cash infusion, the Debtors will likely be forced to liquidate in Chapter 7.

35.    I believe that the relief requested in the CRO Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the CRO Motion should be granted.

> iii.    *Debtors' Motion for Entry of an Order Authorizing (i) Debtors to Pay Prepetition Wages, Salaries, Employee Benefits and Other Compensation and (ii) Financial Institutions to Honor and Process Related Checks and Transfers (the "**Wages Motion**")*

36.    The Debtors seek entry of an order (a) authorizing, but not requiring, them to pay or cause to be paid, in their sole discretion, all or a portion of the amounts owing (and associated costs) under or related to Wages and the Withholding Obligations and (b) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks drawn on the Debtors' payroll accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing.

37.    If the requested relief is not granted, the Debtors' relationships with their Employees would be adversely impacted and there could well be irreparable harm to the Employees' morale, dedication, confidence and cooperation. The Debtors' employees include security at the mine. The Debtors' businesses hinge on their relationships with Dominion, and the ability to provide superior services is vital. The Employees' support for the Debtors' efforts is critical to the success of these chapter 11 cases. At this early stage, the Debtors simply cannot risk the substantial damage to their businesses that would inevitably attend any decline in their Employees' morale attributable to the Debtors' failure to pay wages, salaries, benefits and other similar items.

38.    I believe that the relief requested in the Wages and Benefits Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest and

constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Wages and Benefits Motion should be granted.

> iv. *Debtor's Motion for Entry of an Order (i) Prohibiting Utilities from Altering, Refusing or Discontinuing Service, (ii) Deeming Utility Companies Adequately Assured of Future Performance and (iii) Establishing Procedures for Determining Requests for Additional Adequate Assurance (the "**Utilities Motion**")*

39.     The Debtors seek entry of an order (a) determining that the Debtors' proposed offer of deposits provides Utilities with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (b) approving procedures for resolving requests by Utilities for additional or different assurances beyond those set forth in the Motion, and (c) prohibiting the Utilities from altering, refusing or discontinuing any Utility Services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance.

40.     Uninterrupted Utility Services are essential to the Debtors' ongoing operations. Should any Utility refuse or discontinue service, even for a brief period, the Debtors' operations could be severely disrupted. The impact of this disruption on the Debtors' day-to-day business operations and revenue would be extremely harmful and could jeopardize the value of the Debtors' assets.

41.     I believe that the relief requested in the Utilities Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Utilities Motion should be granted.

> v. *Debtors' Motion for Entry of an Order Authorizing (i) Debtors to Continue and Renew Their Liability, Property, Casualty and Other*

*Insurance Programs and Honor All Obligations in Respect Thereof and
(ii) Financial Institutions to Honor and Process Related Checks and
Transfers (the "**Insurance Motion**")*

42.     The Debtors seek entry of an order authorizing (a) the Debtors to maintain,
continue and renew, in their sole discretion, the Insurance Programs on an uninterrupted basis
and in accordance with the same practices and procedures as were in effect before the Petition
Date, and (b) financial institutions to receive, process, honor and pay checks or wire transfers
used by the Debtors to pay the foregoing. This would include (i) paying all amounts arising
under the Insurance Programs or the financing thereof, and (ii) renewing or obtaining new
insurance policies as needed in the ordinary course of business.

43.     The Debtors maintain various liability, casualty, property and other insurance
and reinsurance and risk control programs through several private insurance carriers in the
ordinary course of the Debtors' businesses. If the requested relief is not granted and the
Insurance Programs lapse or terminate, the Debtors may well be unable to continue large
portions of their operations, thereby endangering the value of the Debtors' assets and
substantially harming all creditors. The Debtors believe that one insurance policy was in
payment default as of the Petition Date and, as such, the Debtors seek authority to satisfy any
such prepetition obligations through the Insurance Motion.

44.     I believe that the relief requested in the Insurance Motion is in the best interests of
the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical
element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of
the Debtors, I respectfully submit that the Insurance Motion should be granted.

vi.. *Debtors' Motion for Entry of an Order Authorizing Debtors to Continue and Renew Surety Bond Program and Financial Institutions to Honor and Process Related Checks and Transfers (the "Surety Motion")*

45. The Debtors seek entry of an order authorizing (a) the Debtors to maintain, continue and renew, in their sole discretion, their Surety Bond Program on an uninterrupted basis and in accordance with the same practices and procedures, including, but not limited to, the maintenance of cash collateral, as was in effect before the Petition Date and (b) their financial institutions to receive, process, honor and pay related checks or wire transfers. This authority would include permitting the Debtors (i) to pay all amounts arising under the Surety Bond Program due and payable after the Petition Date and (ii) to renew or obtain new surety bonds as needed, including, but not limited to, as may be required by law or judicial authority, without further notice or order of the Court.

46. I believe that the relief requested in the Surety Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Surety Motion should be granted.

vii. *Debtors' Motion for Entry of an Order Authorizing Assumption of Agreement, Confirmation, and Amendment with Virginia Electric and Power Company (the "**Assumption Motion**")*

47. The Debtors request entry of an order authorizing the assumption of the Agreement, Confirmation, and Amendment by and between IBCS and Dominion. Filing a motion to assume the Agreement, Confirmation, and Amendment is required by the terms of the Amendment and was a condition precedent to the DIP financing. Without the Amendment, the Debtors could lose the major source of the Debtors' revenue, and will likely be forced to liquidate.

48.    I believe that the relief requested in the Assumption Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Assumption Motion should be granted.

> viii.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) and 364(E) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection To Prepetition Secured Creditors Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364 And (III) Scheduling Final Hearing Pursuant To Bankruptcy Rules 4001(B) And (C) (the "**DIP Financing Motion**")*

49.    The Debtors request entry of an interim and a final order authorizing the Debtors to obtain post-Petition Date financing and to utilize cash collateral based on the terms contained in the proposed interim order attached to the DIP Financing Motion.

50.    For the past several months, the Debtors have been in negotiation with potential lenders concerning additional financing, both inside and outside of bankruptcy. These negotiations ultimately resulted in the DIP Financing Facility that the Debtors are seeking approval of pursuant to the DIP Motion, which was the best viable financing available to the Debtors under the circumstances.

51.    The DIP Financing Facility will address the Debtors' liquidity needs, enable the Debtors to preserve their value as a going concern and allow the Debtors the opportunity to honor the Dominion Amendment and to consummate a restructuring transaction that will maximize recoveries to all parties in interest, whether in the form of a plan of reorganization or a sale.

52.    Importantly, the terms of the DIP Financing Facility are fair and reasonable. I believe the Debtors' request to approve the DIP Financing Facility should be granted for a

variety of reasons. *First*, it contains the best available terms available to the Debtors. *Second*, the DIP Financing Facility provides the Debtors with substantial liquidity required to resume operations. *Third*, no prospective DIP lenders were willing to fund on a junior basis or unsecured basis.

53.    I believe that the process undertaken by the Debtors was full and fair, it was comprehensive, and it produced the best available financing option given the circumstances.

54.    The Debtors greatly need the liquidity offered by the DIP Financing Facility in order to resume operations.  The DIP Financing Facility will also send a strong signal to employees, Dominion, and other parties of the Debtors' intent to continue operating in chapter 11 and consummate a value-maximizing transaction for the benefit of their estates and creditors. Accordingly, if approved, the DIP Financing Facility will preserve and enhance the value of the Debtors' businesses and, as such, is in the best interests of the Debtors' estates and creditors.

## IV.    <u>Conclusion</u>

55.    I respectfully request that all of the relief requested in the First Day Motions, and such other further relief as may be just and proper, be granted.

56.    I, the undersigned President of IBCS and IBCS KY, declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 2, 2014                              /s/ Edmund Scarborough
                                                  Edmund Scarborough
                                                  President

# EXHIBIT A

