**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

In re:

IBCS Mining, Inc., <u>et al.</u>[1]

Debtors.

Chapter 11
Case No. 14-61215
Jointly Administered

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO OBTAIN LIMITED POST-PETITION
DATE FINANCING PURSUANT TO 11 U.S.C. §§ 105, 364(c)(1), AND 364(e);
AND (II) SCHEDULING FINAL HEARING UNDER BANKRUPTCY RULE 4001**

Pursuant to sections 105, 364(c)(1), and 364(e) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), IBCS Mining, Inc., <u>et al.</u>, as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), file this Motion (this "**Motion**") for entry of interim and final orders, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Order**"), (a) authorizing IBCS Mining, Inc., <u>et al.</u>, to obtain limited post-Petition Date financing up to an aggregate principal amount not to exceed twenty-five thousand dollars ($25,000) (the "**Limited**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: IBCS Mining, Inc., (8425) and IBCS Mining, Inc., Kentucky Division (8711). The location of the Debtors' service address is 944 Glen Wood Station Lane, Suite 101, Charlottesville, Virginia 22901.

---

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:    804.771.9500
Facsimile:    804.644.0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*

**Advance**") to fund the operational and working capital needs of the Debtors on a temporary basis until the Debtors are able to finalize the terms of more extensive debtor-in-possession financing.[2] In support of this Motion, the Debtors respectfully represent as follows:

## Background and Jurisdiction

4. On June 27, 2014 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. By order entered July 8, 2014 (Docket No. 67), the Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

6. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Edmund Scarborough, IBCS Mining, Inc.'s President, which is incorporated herein by reference and which was admitted into evidence at the hearing held on July 7, 2014.

7. The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by the Court. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for relief requested herein are sections 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 6004.

8. On July 2, 2014, the Debtors filed the *Motion for Entry of Order Providing for the Appointment of David Stetson as Chief Restructuring Officer of the Debtors Effective Nunc Pro*

---

[2] The Debtors are in the process of negotiating the terms of new debtor-in-possession financing. The Debtors intend to file a motion requesting approval of the new debtor-in-possession financing within the next one to three business days and to request a hearing on such motion to be held on July 23.

*Tunc to the Petition Date* (the "**CRO Motion**") (Docket No. 28). By Order entered on July 8, 2014, the Court granted the CRO Motion and David Stetson (the "**CRO**") was appointed as the Debtors' Chief Restructuring Officer (Docket No. 61).

9. By the *Debtors Motion for Entry of Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Post-Petition Date Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C)* (the "**DIP Motion**") (Docket No. 32), the Debtors had requested approval to obtain debtor-in-possession financing, which would allow the Debtors to resume mining operations. Although granted on an interim basis at a hearing held on July 7, 2014, for reasons outside of the Debtors' control, the Debtors have been unable to submit an Order on the DIP Motion and, thus, have been unable to obtain the approved DIP Financing.

10. The Debtors are in negotiations with a lender regarding new debtor-in-possession financing. Although the Debtors intend to request court approval of such new financing in the near future, the Debtors have an immediate need for funds in order to continue operations on a limited basis. Specifically, the Debtors' general liability and automobile insurance and two weeks of the Debtors' payroll are due and owing. The amounts due and owing are more fully described as:

| **Expense** | **Amount** |
|---|---|
| General Liability and Automobile Insurance | $1,890.15 |
| Payroll for June 29 – July 5 | $5,630.38 |
| Payroll for July 6 – July 12 | $5,630.38 |
| **TOTAL** | **$13,150.91** |

11. The CRO believes that the Debtors' Chapter 11 cases can be successful. As such, the CRO has agreed to lend to the Debtors the Limited Advance in the maximum amount of twenty-five thousand dollars ($25,000) to pay for these post-Petition Date expenses until a more extensive DIP financing facility is secured, in exchange for a superpriority administrative claim pursuant to sections 364(c)(1) for any amounts actually extended to the Debtors which claim is to be paid through any subsequently approved debtor-in-possession financing.

## Basis for Relief

**A.  The Debtors Should Be Authorized to Obtain the Limited Advance Under Section 364 of the Bankruptcy Code**

11. The Debtors meet the requirements for relief under section 364 of the Bankruptcy Code, which permits a debtor to obtain post-petition financing and, in return, to grant superpriority administrative claim status. Specifically, section 364(c) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:
>
> (1)  with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; [or]
>
> (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)  secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

12. Provided that an agreement to obtain credit is consistent with the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in exercising its sound business judgment in obtaining such credit. *See, e.g.*, *In re Barbara K.*

*Enters., Inc.*, Case No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

13. Based on the facts of these Cases, the Limited Advance represents a proper exercise of the Debtors' business judgment. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including decisions about whether and how to borrow money. *Grp. of Institutional Investors v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

14. In general, a bankruptcy court defers to a debtor's business judgment regarding the need for, and the proposed use of, funds, unless the debtor's decision improperly leverages the bankruptcy process or its purpose is not so much to benefit the estate as it is to benefit a party in interest. *See Ames Dep't Stores*, 115 B.R. at 40; *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 511–13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the [Bankruptcy] Code." *Id.* at 513–14 (footnote omitted).

15. To determine whether the business judgment test is met, "the court 'is required to examine whether a reasonable business person would make a similar decision under similar

circumstances.'" *In re Dura Auto. Sys., Inc.*, 06-11202 KJC, 2007 WL 7728109 (Bankr. D. Del. Aug. 15, 2007) (quoting *In re Exide Technologies*, 340 B.R. 222 (Bankr. D. Del. 2006) *appeal denied, judgment aff'd*, BK 02-11125 (KJC), 2008 WL 522516 (D. Del. Feb. 27, 2008) *vacated and remanded on other grounds*, 607 F.3d 957 (3d Cir. 2010)).

16. Here, the Debtors have exercised sound business judgment in determining that the Limited Advance is appropriate. This Limited Advance will allow the Debtors to pay their immediate obligations while continuing to negotiate a more extensive DIP financing facility. Without the Limited Advance, the Debtors will be unable to pay their employees and their insurance obligations and may be forced to liquidate. The Debtors' decision is therefore sound and reasonable under the circumstances. The terms of the Limited Advance are also fair and reasonable in light of current market conditions.

17. Courts have articulated a three-part test to determine whether a debtor is entitled to obtain financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

(1) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative expense claim;

(2) the credit transaction is necessary to preserve the assets of the estate; and

(3) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *accord In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988); *In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

18. In order to satisfy this test, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray*

*v. Shenandoah Fed. Savs. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986); *accord In re Ames Dep't Stores, Inc.*, 115 B.R. at 37 (debtor must show that it has made reasonable efforts to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id*.; *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001). This is true especially when time is of the essence. *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). When few lenders are likely to be able and willing to extend the necessary credit, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also Ames Dep't Stores*, 115 B.R. at 40.

19. Here, the Debtors have used reasonable, good faith efforts to try to obtain credit. Prior to entering into Chapter 11, the Debtors conducted arm's length, good faith negotiations with lenders on the terms of their post-Petition Date financing. Through these negotiations, the Debtors were unable to solicit any viable proposals that authorized financing on an unsecured or administrative expense basis. The DIP financing facility that the Debtors secured and which the Court approved on an interim basis was extended superpriority secured status. However, the Debtors, due to events outside of the Debtors' control, have been unable to submit an interim order. As soon as the Debtors determined that they may be unable to submit the interim order, the Debtors entered into negotiations with other lenders to obtain a DIP financing facility, but require an immediate cash infusion in order to meet their current obligations. The Limited Advance will provide such an immediate cash infusion, but will only be extended to the Debtors

if it is awarded superpriority status and if it is paid through the proceeds of any subsequently approved debtor-in-possession financing. The Debtors need the funding provided by the Limited Advance and cannot wait to finalize a more extensive DIP financing facility.

20. The Court should therefore authorize the Debtors to provide superpriority administrative expense status for any obligations arising under the Limited Advance as provided for in section 364(c)(1) of the Bankruptcy Code.

21. Here, given all the facts and circumstances present in these cases, the Debtors have amply satisfied the necessary conditions under section 364(c) of the Bankruptcy Code for authority to enter into the Limited Advance. The Debtors exercised proper business judgment in securing the Limited Advance on terms that are fair, reasonable and the best available to them in the current market. Moreover, the Debtors were not otherwise able to obtain immediate credit on an unsecured or administrative expense basis. For all these reasons, the Court should grant the Debtors' request to enter into the Limited Advance pursuant to section 364(c) of the Bankruptcy Code.

### B. The CRO Should Be Deemed a Good Faith Lender under Section 364(e)

22. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

23. As explained in detail herein, the Limited Advance is the product of the Debtors' business judgment. The terms and conditions of the Limited Advance are fair and reasonable, and the proceeds of the Limited Advance will be used only for purposes that are permissible under the Bankruptcy Code. Accordingly, the Court should find that the CRO is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and is entitled to all of the protections afforded by that section.

### C. The Debtors Require Immediate Access to the Limited Advance

24. The Court may grant interim relief in respect of a motion filed pursuant to section 363(c) or 364 of the Bankruptcy Code where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). In examining requests for interim relief under this rule, courts in this jurisdiction generally apply the same business judgment standard applicable to other business decisions. *See Ames Dep't Stores*, 115 B.R. at 36.

25. The Debtors and their estates will suffer immediate and irreparable harm if the interim relief requested herein is not granted promptly. The Debtors have insufficient cash to meet their debt obligations and fund operations without immediate access to the Limited Advance.

26. The importance of a debtor's ability to secure post-petition financing to prevent immediate and irreparable harm to its estate has been repeatedly recognized in bankruptcy courts in similar circumstances. *See, e.g.*, *In re Va. United Methodist Homes of Williamsburg, Inc.*, Case No. 13-31098 (KRH) (Bankr. E.D. Va. Mar. 6, 2013) (order approving post-petition financing on an interim basis); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012) (same); *In re Roomstore, Inc.*, Case No. 11-37790 (KLP)

(Bankr. E.D. Va. Dec. 14, 2011) (same); *In re Bear Island Paper Co., L.L.C.*, Case No. 10-31202 (DOT) (Bankr. E.D. Va. Feb. 26, 2010) (same); *In re Canal Corp. f/k/a Chesapeake Corp.*, Case No. 08-36642 (DOT) (Bankr. E.D. Va. Bankr. Dec. 30, 2008) (same); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008) (same); *In re Patriot Coal Corp.*, Case No. 12-12900 (ALG) (Bankr. S.D.N.Y. July 11, 2012); *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 20, 2012) (same); *In re Lyondell Chem. Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 8, 2009) (same). Accordingly, for the reasons set forth above, prompt entry of the Interim Order is necessary to avert immediate and irreparable harm to the Debtors' estates and is consistent with, and warranted under, Bankruptcy Rules 4001(b)(2) and (c)(2).

**D.    Request for Final Hearing**

27.    Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a Final Hearing.

28.    The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the Notice Parties listed below. The Debtors further request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

**Request for Waiver of Stay**

29.    The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "a[n] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Limited Advance is essential to prevent irreparable damage to the Debtors' operations and enterprise value.

Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### Notice

30. No trustee, examiner or creditors' committee has been appointed in these Cases. The Debtors have served notice of this Motion and the Interim Hearing on (a) the Office of the United States Trustee for the Western District of Virginia (the "**U.S. Trustee**"); (b) those creditors holding secured claims against the Debtors' estates; (c) those creditors holding the twenty largest unsecured claims against the Debtors' estates; (d) the Internal Revenue Service; and (e) the United States Environmental Protection Agency (collectively, the "**Notice Parties**"). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that further notice of this Motion is neither required nor necessary.

### No Previous Request

31. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: July 17, 2014

Respectfully submitted,

  /s/  Robert S. Westermann
Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:   (804) 644-0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*

**Exhibit A**

Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

In re:

IBCS Mining, Inc., et al.[3]

Debtor.

Chapter 11
Case No. 14-61215
Jointly Administered

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN LIMITED POST-PETITION DATE FINANCING PURSUANT TO 11 U.S.C. §§ 105, 364(c)(1), AND 364(e); AND (II) SCHEDULING FINAL HEARING UNDER BANKRUPTCY RULE 4001

Upon the motion (the "**Motion**") IBCS Mining, Inc., et al., as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), by their proposed counsel, for entry of an order authorizing the Debtors to obtain limited post-Petition Date Financing pursuant to sections 105, 364(c), and 364(e) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the corresponding Local Rules for the United States Bankruptcy Court for the Western District of Virginia (the "**Local Rules**"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

---

[3] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: IBCS Mining, Inc., (8425) and IBCS Mining, Inc., Kentucky Division (8711). The location of the Debtors' service address is 944 Glen Wood Station Lane, Suite 101, Charlottesville, Virginia 22901.

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:    804.771.9500
Facsimile:    804.644.0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*

pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having reviewed the Motion and having held a hearing with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion is hereby **GRANTED ON AN INTERIM BASIS**.

2. All objections to the interim relief sought in the Motion, to the extent not withdrawn or otherwise resolved, are hereby **OVERRULED**.

3. The Debtors are hereby authorized, but not directed, to enter into Limited Advance on an interim basis and to the extent consistent with the terms of this Interim Order.

4. The Debtors are hereby authorized, but not directed, to borrow money and incur indebtedness up to an aggregate principal amount of twenty-five thousand dollars ($25,000) pursuant to the Limited Advance to pay for the immediate working capital needs of the Debtors until the Debtors are able to obtain a more extensive DIP financing facility.

5.       The Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Order.

6.       Upon entry of this Interim Order, the Limited Advance shall constitute and represent valid, binding, and non-avoidable obligations of each of the Debtors enforceable against each of the Debtors in accordance with the terms of this Interim Order for all purposes during these Chapter 11 Cases, any subsequently converted case of the Debtors under chapter 7 of the Bankruptcy Code or after the dismissal of these Chapter 11 Cases.  No obligation, payment, right, or transfer under the Limited Advance or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.       Pursuant to section 364(c)(1) of the Bankruptcy Code, any amounts advanced to the Debtors under the Limited Advance shall constitute allowed administrative expense claims against the Debtors, and pursuant to section 364(c)(1) of the Bankruptcy Code shall have priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall

be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, excluding avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code and proceeds thereof.

8. If an order dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code, or otherwise, is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations under the Limited Advance shall have been indefeasibly paid and satisfied in full (and that such Superpriority Claims shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such Superpriority Claims referred to in clause (i) above.

9. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect the validity, priority, or enforceability of any obligations incurred under the Limited Advance. Notwithstanding any such reversal, stay, modification, or vacation, obligations, the CRO shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code and this Interim Order.

10. Except as expressly provided in this Interim Order, the Superpriority Claims granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting these Chapter 11 Cases to cases under chapter 7, dismissing these Chapter 11 Cases, or by any other act or omission; or (ii) the entry of an order confirming a plan of reorganization (or a plan of liquidation) in these Chapter 11 Cases.

The terms and provisions of this Interim Order shall continue in these Chapter 11 Cases, in any successor cases, or in any superseding chapter 7 cases under the Bankruptcy Code. The Superpriority Claims and all other rights and remedies of the CRO granted by the provisions of this Interim Order shall continue in full force and effect until any and all such obligations incurred under the Limited Advance are indefeasibly paid and satisfied in full.

11. This Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution of effectiveness of this Interim Order.

12. Objections to the entry of the Final Order shall be in writing and shall be filed with the Clerk of this Court, on or before 4:00 p.m. (prevailing Eastern time) on the date that is five (5) business days prior to the Final Hearing, with a copy served upon proposed counsel to the Debtors.

13. The Final Hearing is scheduled for August __, 2014 at ___ (Eastern) before this Court.

Dated: _____          _____
                                         United States Bankruptcy Judge

Entered on Docket:

We ask for this:

  /s/  Robert S. Westermann
Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:   (804) 644-0957
E-mail: rwestermann@hf-law.com
         rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*